IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Unula Boo-Shawn Abebe a/k/a Unula B Abebe, | ) | C/A No.    5:11-cv-2750-RMG-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Lieutenant Carter, Maurice Green, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his civil rights. This matter is before the court on the Motion for Summary Judgment filed by Defendants on May 7, 2012. ECF No. 73.   As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on May 7, 2012, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 75.   Plaintiff responded to Defendants' Motion for Summary Judgment on June 4, 2012, making this motion ripe for consideration.   ECF No. 81.   This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.[2]   Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).
[2] On January 2, 2012, the matter was reassigned from United States Magistrate Judge Paige J. Gossett to the undersigned. ECF No. 20.

I.    Background

Plaintiff Unula Boo-Shawn Abebe is an inmate currently incarcerated at Perry Correctional Institution. ECF No. 73 at 2.  During the time period relevant to his Complaint, Plaintiff was incarcerated at Broad River Correctional Institution ("BRCI").  ECF No. 1 at 4. Plaintiff filed his Complaint on October 10, 2011.[3] ECF No. 1. In his Complaint, Plaintiff claims that Defendants have deprived him of liberty, property, equal treatment and access to courts in violation of his substantive and procedural due process rights under the Fifth and Fourteenth Amendments, and denied him humane living conditions in violation of the Eighth Amendment. ECF No. 1 at 2.  Plaintiff also asserts state law claims for civil conspiracy and assault.  *Id.*  All Defendants are "sued in their individual capacities for damages and civil arrest, and in their official capacities for preliminary injunct[ive] relief."  *Id.*

Plaintiff specifically contends that on or about September 17, 2010, he was placed on "control cell" status and all his property was confiscated and all his clothing was removed except for his underwear.  ECF No. 1 at 4.  Plaintiff contends that he was kept in a "control cell" for 18 days and that SCDC only permits placement in control cell for 72 hours. *Id.*  Plaintiff therefore argues that his extended placement in control cell was improper.  *Id.*  Plaintiff contends that he was denied a mattress, sheets, and a blanket this entire time period and slept on concrete.  *Id.* Plaintiff also contends that he was denied utensils, a toothbrush and toothpaste, and an opportunity to bathe.  *Id.*  Plaintiff also argues that he was denied his court papers.    *Id.*

---

[3] On November 4, 2011, Plaintiff filed a document that was construed by the court as an Amended Complaint.  ECF No. 9. Subsequent to this filing, Plaintiff notified the court that he did not intend to amend the Complaint filed on October 10, 2011, and has requested to proceed under the allegations in his initial Complaint.  The court will therefore evaluate Defendants' Motion for Summary Judgment based on the allegations in Plaintiff's initial Complaint taken together with the allegations in the purported Amended Complaint.

Plaintiff alleges that he was again placed on control cell status on February 16, 2011, and all his belongings were confiscated, along with his clothing.[4]  ECF No. 1 at 5. Plaintiff contends that he was kept on control cell for 217 days continuously.  *Id.* at 5. Plaintiff argues that he was denied an opportunity to bathe for 113 days, and to brush his teeth for three months.  *Id.*  Plaintiff contends that he was denied clothing and was completely naked for four months, that he was denied a security blanket for six months, and was denied a mattress, sheets, and blankets from February 16, 2011 to October 12, 2011 (date of filing of his response).  *Id.*  Plaintiff also alleges that his legal materials and property were taken and not returned.  *Id.* at 5, 10.  Plaintiff argues that he was sprayed with mace on or about February 27, 2011 while completely naked and then denied medical treatment or an opportunity to wash the chemicals off for three months.  *Id.* Plaintiff contends that Defendants refused to provide him with monthly supplies of soap, toothbrush, toothpaste, and envelopes from March to June.  *Id.* at 6.  Plaintiff alleges that he was prevented from signing up for sick call for three months, and that Defendants refused to provide him with grievance forms from March to June 2011.  *Id.* at 6-7.  Plaintiff contends that in May 2011 he was taken to the administrative section of the dorm, naked except for an envelope covering his private parts, and made to walk in view of other inmates and staff.  *Id.* at 10. Plaintiff contends that these conditions of confinement caused him physical and emotional distress.  ECF No. 1 at 5-11.

Plaintiff seeks $10,000,000 in nominal damages, $10,000,000 in punitive damages, $23,587,200 in special damages, $33,587,200 in compensatory damages, that Defendants be sentenced to prison terms if found guilty of assault or civil conspiracy or any other constitutional

---

[4] Plaintiff notes that he was initially permitted to keep his underwear, but those were later confiscated also.  ECF No. 1 at 5.

violation, $10,000,000 for conspiracy and tort claims, and declaratory and injunctive relief. ECF No. 1 at 19-20.

II.      Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.   477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts

immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.    Analysis

A.  Eleventh Amendment Immunity

To the extent that Plaintiff is suing Defendants in their official capacities, Defendants are entitled to summary judgment.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

As Defendants are agents or employees of the State of South Carolina, when acting in their official capacities they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A State cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663.  The State of South Carolina has not consented to be sued in this case.  S.C. Code Ann. § 15-78-20(e).   As an arm of the State, Defendants are immune from suit under the Eleventh Amendment.  Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

### B.  Deprivation of Personal Property

Plaintiff argues that Defendants deprived him of his personal property when they withheld his property longer than the 72 hours permitted by SCDC policy without first providing him with notice of the deprivation, a hearing to address the claimed violations, and a statement detailing the reasons for confiscating his property.  ECF No. 1 at 14.  Plaintiff also contends that he was not given an opportunity to pursue post-deprivation remedies due to Defendants' refusal to provide him with grievance forms, paper, pen, and an envelope.  *Id.*  Defendants contend that Plaintiff's claims concerning his property should be dismissed because they do not rise to the level of a constitutional violation.  ECF No. 73 at 10.

A prisoner's claim for deprivation of personal property is not cognizable under § 1983.  *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (holding that a prisoner was "deprived" of his property within the meaning of the due process clause of the Fourteenth Amendment but that the state's tort remedy provided all the process that was due); *see also Mora v. City of Gaithersburg*, 519 F.3d 216, 230-32 (4th Cir. 2008)(finding that deprivations of personal property by corrections officials are not constitutional violations where there are procedures available for the inmate to recover that property or to be financially compensated for the loss).  Here, Plaintiff can institute a civil action in the state courts to recover his personal property under state law.  *See, e.g.,* S.C. Code §§ 15-69-10 to -210.  Therefore, the undersigned recommends that this claim be dismissed.

### C.  Failure to Accurately and Timely Process Grievances

Plaintiff asserts that Defendants failed to provide him with grievance forms and improperly processed his grievances.  ECF No. 1 at 12.  Plaintiff also argues that the grievance system provided by SCDC is constitutionally inadequate.  *Id.*  Defendants argue that Plaintiff's

grievance history establishes that Plaintiff filed at least 70 grievances between September 2010 and November 2011 and, therefore, his claims that he was denied an opportunity to file grievances is not supported by the record. ECF No. 73 at 9.

Inmates do not have a constitutionally protected right to a grievance procedure within the prison system under the First Amendment, the Due Process Clause, or any other statute. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (finding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Thus, there is no constitutional right to file a grievance, nor is there a constitutional right to have a grievance timely determined within the prison system. Accordingly, the undersigned recommends that this claim be dismissed.

D. Failure to Exhaust

Defendants contend that they are entitled to summary judgment on Plaintiff's claims that he was denied an opportunity to bathe, eating utensils, access to toothpaste and toothbrush, and access to his legal materials because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e. ECF No. 73 at 5-6. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731

(2001). Those remedies "'need not meet federal standards', nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs.*, *Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). However, '[d]efendants may . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures.'" *Stenhouse v. Hughes*, C/A No. 9:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

Defendants offer a printout of Plaintiff's grievance history and argue that no grievances regarding bathing, access to toothpaste and toothbrush, access to legal materials, or eating utensils, were filed from September 2010 to November 2011. ECF Nos. 73 at 6, 73-5. In response to this argument, Plaintiff contends that from February to June 2011, Defendants refused to provide him with grievance forms and writing materials. ECF No. 81 at 2. Plaintiff argues that in February and March 2011 he was able to get pen and paper from other inmates and he hand drafted a Request to Staff and wrote his complaints regarding his mistreatment by staff and his living conditions. *Id.* at 3. Plaintiff contends that he sent this Request to the grievance office stating that the staff was refusing to provide him with grievance forms so he was "stating [his] grievance on the Request to Staff Form." *Id.* Plaintiff contends he did this at least five times and each time the grievance office personnel would tell him to use a grievance form. *Id.*

Plaintiff contends that it was not until June or July 2011 that the grievance office started treating these Request forms as grievances, but by then his time period for some of his grievances had expired. *Id.*

The undersigned has reviewed the summary of Plaintiff's grievance history provided by Defendants. During the relevant time period Plaintiff filed grievances with issues described as food, property, mail/correspondence, unprofessional conduct, institutional security/operations, medical/health services staff, and institutional conditions. ECF No. 73-5. Because Defendants did not provide copies of the actual grievances, or provide any affidavits from relevant personnel concerning the grievances filed by Plaintiff, the undersigned is unable to discern what complaints may have been included in the listed grievances. Further, several of these grievance dispositions are noted as unprocessed which lends credence to Plaintiff's allegations that he filed grievances concerning these claims but they were returned unprocessed because they were on improper forms. The undersigned finds that Defendants have not met their burden of showing "there is no genuine dispute as to any material fact" regarding Plaintiff's failure to exhaust his administrative remedies and therefore the undersigned recommends that Defendants' motion for summary judgment for failure to exhaust be denied without prejudice.

E.  Denial of Medical Care

Plaintiff contends that Defendants denied him medical attention for his back injury and back pains. ECF No. 1 at 17. Plaintiff also argues that he was not given medical treatment when he was sprayed with a "lethal amount" of chemical mace on February 27, 2011. *Id.* Addressing Plaintiff's claim concerning his back injury and pains, Defendants contend they are entitled to summary judgment on this claim because Plaintiff's medical records show that he was observed or treated at least 40 times for "routine check ups and by specific request of the Plaintiff

between September 2010 and January 2012" by SCDC medical personnel. ECF No. 73 at 9. Defendants, however, do not attach Plaintiff's medical records or provide an affidavit from SCDC staff or medical personnel regarding Plaintiff's medical treatment.   Regarding Plaintiff's argument concerning lack of treatment for mace sprayed on him on February 27, 2011, Defendants contend that a review of the warden's records show that mace was deployed three times in September 2011, and on these occasions Plaintiff was treated by medical staff who indicated no additional treatment was needed.  ECF No. 73 at 10.  Defendants provide a copy of the September 2011 incident reports for this court's review.  *See* ECF No. 73-9.

In order to prevail on a cause of action for deliberate indifference to medical needs, Plaintiff must show that the named Defendants were deliberately indifferent to his serious medical needs.  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Deliberate indifference to a serious medical need requires proof that each Defendant knew of and disregarded the risk posed by the Plaintiff's objectively serious medical needs.  *Farmer*, 511 U.S. at 837.   In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986).

Although Defendants contend that Plaintiff's allegations concerning denial of medical treatment are factually incorrect, Defendants do not provide the court with medical records or an affidavit from relevant SCDC personnel to support their contention that Plaintiff was provided with medical care for his purported back injury.   Further, although Defendants provide documentation to show that Plaintiff was provided with treatment for mace administered in September 2011, Defendants have not offered any evidence concerning the February 2011

incident that would show that Plaintiff was not sprayed with mace on this date, or that Plaintiff was sprayed with mace, but provided treatment.    The undersigned therefore recommends that Defendants' motion for summary judgment on denial of medical care be denied without prejudice.

### F.  Violation of Due Process

Defendants argue that to the extent Plaintiff is generally complaining about his placement on control cell status, they are entitled to summary judgment because Plaintiff's allegation does not rise to the level of a constitutional deprivation of rights.    ECF No. 73 at 7.   The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994); *see also Posey v. Dewalt*, 86 F. Supp. 2d 565, 571 (E.D. Va. 1999) (stating that "[p]ut simply, petitioner has not stated a viable due process claim because he has no protected liberty interest in a particular classification within [Bureau of Prisons]").   "[A]n inmate's disagreement with [his custodial] classification is insufficient to establish a constitutional violation."   *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).   To show a constitutional violation with respect to a custody classification, Plaintiff must show that the conditions of confinement exceed the sentence imposed or create an atypical or significant hardship in violation of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472 (1995).

Plaintiff contends that Defendants kept him in control cell status longer than the 72 hours authorized by SCDC policy causing Plaintiff to suffer significant hardship.   ECF No. 1 at 12. Plaintiff alleges that he had to sleep on the concrete floor or a steel bedframe for six months, causing back, arm, and leg pain.   *Id.* at 11.   Plaintiff contends that he was also unable to bathe and therefore could not wash mace from his skin for over three months which caused him to

experience periodic burning sensations.  *Id.*  Plaintiff also alleges that he was unable to brush his

teeth for approximately three months which caused his gums to weaken and bleed.  *Id.* at 11-12.

SCDC Policy OP-22.12:31.1, quoted verbatim, provides that an inmate may be placed in

a control cell for up to 72 hours when the inmate:

- is a threat to others by his/her actions;
- is deliberately causing damage to the cell; is using items in the cell to cause damage to the cell or any part of the cell's facilities; and/or
- is using items in the cell to disrupt operations in any manner.

ECF No. 39-1 at 14-15.  SCDC Policy OP-22.12:31.2  states that an inmate will be reviewed at

24 and 48 hours for possible release from the control cell and that the only items an inmate is

permitted to have while on this status is one pair of underwear, one paper gown, and one security

blanket.  *Id.* at 15.  SCDC Policy OP-22.12:31.4 provides that an inmate will be released from

the  control  cell  when  the  Warden,  Duty  Warden,  or  Major  determines  that  inmate  is

demonstrating compliance with institutional rules.  *Id.* at 15.

Defendants aver that "a review of Plaintiff's records do not precisely indicate when he

was placed on 'control cell,'" but Defendants argue that Plaintiff's records do show that Plaintiff

had 13 assaultive and 19 non-assaultive violations of SCDC procedures which would coincide

with Plaintiff's alleged placement on control cell status in September 2010 and February 2011.

ECF  No.  73  at  9.    Defendants  also  offer  an  Extension  Request  completed  by  Defendant

Cartledge on February 27, 2012, requesting that Plaintiff's control cell status be extended "due to

numerous incidents of assault on staff, pulling the sprinkler, and being placed on control cell

status several times."  ECF No. 73-8.  Defendants argue that Plaintiff was convicted of eight

assaultive  and  12  non-assaultive  violations  subsequent  to  this  extension  request  which

demonstrates his lack of compliance with SCDC policies and rules justifying his continued

placement on control cell status.  *Id.* at 9.

Generally, Plaintiff's allegations that Defendants did not follow SCDC's policies or procedures, standing alone, would not amount to a constitutional violation. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (The "Constitution creates no entitlement to … any such procedure voluntarily established by a state."). However, the undersigned has reviewed the arguments and evidence offered by Defendants and finds that it is insufficient to establish that Defendants provided minimal due process as required by the Constitution. There is no evidence in the record as to why Plaintiff was placed in "control cell" status, how long he remained in "control cell" status, whether or not the extension request was granted, and if so, for what period of time. While additional evidence may reveal there is no genuine issue of material fact, Defendants – at this time – have not met their burden of showing that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, the undersigned recommends that Defendants' motion for summary judgment as to this claim be denied without prejudice.

### G.  Conditions of Confinement

Plaintiff contends that he was denied a mattress for over six months and was, therefore, forced to sleep on the concrete floor or the steel bedframe. ECF No. 1 at 17. Plaintiff argues that this denial of a mattress caused him back, side, leg, and arm pains. *Id.* Plaintiff also contends that he was denied a cup and spoon for ten days, the opportunity to bathe, and the use of a toothbrush, toothpaste, soap, towel, washcloth and deodorant for three months. *Id.* Plaintiff also alleges that he was denied sheets and a blanket for six months, and clothing for over three months, which resulted in him being taunted by other inmates. *Id.* Plaintiff states he was denied a shower for three months after he was sprayed with mace while completely naked, and that the mace would "reactivate from time to time causing continuous burning." *Id.*

As a general matter, the Eighth Amendment prohibits punishments that "are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' or which involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102-103.  Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832.  Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim.").

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991); *Shakka*, 71 F.3d at 166. To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference--that is, the prisoner must show the officials acted with more than mere negligence but less than malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Farmer,* 511 U.S. at 835-37. For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 Fed. Appx. 348, 353 (4th Cir. 2012).

SCDC Policy OP-22.36.1 states that an inmate's mattress may be confiscated when an "inmate is found to have damaged, destroyed, or abused any state property."  ECF No. 39-2 at 2. Section 1.2 of this policy provides that the Warden may authorize confiscation of a mattress for

up to one year "if the property has been used to set a fire in [inmate's] cell or used to assault a staff member or inmate." *Id.* Section 1.2 also explains that the confiscation of the mattress is not considered grievable. *Id.* Section 1.3 provides that the Warden is to "notify the inmate by memo of the length of the confiscation and the reasons for the confiscation and that security staff will be responsible for documenting any confiscated items and the duration of the confiscation in the unit log book." *Id.*

The undersigned finds that Defendants have failed to properly address Plaintiff's claims of Eighth Amendment violations. While SCDC policy permits an inmate's mattress to be confiscated for up to one year, Defendants have not offered any evidence to support why Plaintiff's mattress was confiscated or how long the confiscation was to last. Although Defendants point to evidence in the record that Plaintiff was offered, and declined, a mattress in October 2011, this evidence is insufficient to support a grant of summary judgment to Defendants. Defendants have also not offered any evidence that addresses if, and why Plaintiff was denied access to a shower; why Plaintiff's clothing, sheets, blanket and hygiene items were removed; and for how long a time period Plaintiff was without these items. As Defendants have presented insufficient evidence which addresses Plaintiff's alleged constitutional violations under the Eighth Amendment, the undersigned recommends that Defendants' motion for summary judgment on this claim be denied without prejudice.

H.  Denial of Access To Court

Plaintiff contends that when he was placed in control cell status in September 2010 and February 2011, he was denied paper, pens, and envelopes. ECF No. 1 at 15. Plaintiff also argues that his court papers and legal materials were confiscated which caused him to miss an October 5, 2010 deadline and February to March 2011 court deadlines in his pending civil and

criminal cases.  ECF No. 1 at 4, 12, 15.   Specifically, Plaintiff argues that he was not able to file

motions or conduct research or investigations in his pending court cases because he did not have

his case number, warrant number, case file, or legal files.  *Id.* at 16.  Plaintiff also contends that a

pending federal court case was dismissed in part because he was unable to respond to the court's

deadline because Defendants refused to return all his case files in the case.  *Id.*

The right of access to the courts is the right to bring to court a grievance that the inmate

wished to present, and violations of that right occur only when an inmate is "hindered [in] his

efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996).  In order to make

out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory

allegations; he must identify with specificity an actual injury resulting from official conduct.

*Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).  Actual injury requires that the inmate

demonstrate that his "non-frivolous" post-conviction or civil rights legal claim has been

"frustrated" or "impeded." *Lewis*, 518 U.S. at 354-55.

Defendants have not offered any evidence that addresses Plaintiff's denial of access to

courts claim other than to argue that this claim is barred because Plaintiff did not exhaust his

administrative remedies.   For the reasons articulated *supra* in support of the denial of

Defendants' summary judgment motion regarding Plaintiff's exhaustion of administrative

remedies, the undersigned recommends that Defendants' motion for summary judgment on this

claim be denied without prejudice.

I.   Qualified Immunity

Defendants assert that they are entitled to qualified immunity as a matter of law.  ECF 73

at 13.  The Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), established the

standard that the court is to follow in determining whether a defendant is protected by this

immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case – that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit." *Id.* (citations and internal quotation marks omitted).

Given the present factual disputes, it is not possible for the undersigned to determine whether Defendants are entitled to qualified immunity. Therefore, it is recommended that Defendants' motion for summary judgment on qualified immunity grounds be denied without prejudice.

IV.    Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that Defendants' Motion for Summary Judgment, ECF No. 73, be granted in part and denied in part. Specifically, it is

recommended that Defendants be granted summary judgment as a matter of law on Plaintiff's Eleventh Amendment, failure to provide and address grievances, and deprivation of personal property claims.  It is further recommended that Defendants' remaining summary judgment grounds be denied without prejudice.[5]

IT IS SO RECOMMENDED.


January 23, 2013                                     Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[5] Because Defendants did not address Plaintiff's equal protection claim in their Motion for Summary Judgment, this Report and Recommendation does not address that cause of action.