UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Unula Boo-Shawn Abebe a/k/a Unula B Abebe, | ) | C/A No.    5:11-cv-2750-RMG-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Lieutenant Carter, Maurice Green, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his civil rights. This matter is before the court on the Supplemental Motion for Summary Judgment filed by Defendants on April 8, 2013. ECF No. 120.[1] As Plaintiff is proceeding pro se, the court entered a *Roseboro*[2] order on April 9, 2013, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 126. Plaintiff responded to Defendants' Motion for Summary Judgment on June 6, 2013, ECF No. 136, and Defendants filed a reply to Plaintiff's response on June 17, 2013, ECF No. 140, making this motion ripe for consideration. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d)

---

[1] Additional attachments and exhibits to Motion were also filed. *See* ECF Nos. 121- 124.
[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

and (e), D.S.C.[3]  Because this motion is dispositive, a Report and Recommendation is entered for the court's review.[4]

## I.     Background

Plaintiff Unula Boo-Shawn Abebe is an inmate currently incarcerated at Perry Correctional Institution. ECF No. 73 at 2.  During the time period relevant to his Complaint, Plaintiff was incarcerated at Broad River Correctional Institution ("BRCI").  ECF No. 1 at 4.  Plaintiff filed his Complaint on October 10, 2011.[5]  ECF No. 1. In his Complaint, Plaintiff claims that Defendants have deprived him of liberty, property, equal treatment, and access to courts in violation of his substantive and procedural due process rights under the Fifth and Fourteenth Amendments, and denied him humane living conditions in violation of the Eighth Amendment.  ECF No. 1 at 2.  Plaintiff also asserts state law claims for civil conspiracy and assault.  *Id.*  All Defendants are "sued in their individual capacities for damages and civil arrest, and in their official capacities for preliminary injunct[ive] relief."  *Id.*

Plaintiff specifically contends that on or about September 17, 2010, he was placed on "control cell" status and all his property was confiscated and all his clothing was removed except for his underwear.  ECF No. 1 at 4.  Plaintiff contends that he was kept in a "control cell" for 18 days and that SCDC only permits placement in control cell for 72 hours. *Id.*  Plaintiff therefore argues that his extended placement in control cell was improper.  *Id.*  Plaintiff contends that he was denied a mattress, sheets, and a blanket this entire time period and he slept on concrete.  *Id.*

---

[3] On January 2, 2012, the matter was reassigned from United States Magistrate Judge Paige J. Gossett to the undersigned. ECF No. 20.

[4] Other pending motions are addressed within.

[5] On November 4, 2011, Plaintiff filed a document that was construed by the court as an Amended Complaint.  ECF No. 9. Subsequent to this filing, Plaintiff notified the court that he did not intend to amend the Complaint filed on October 10, 2011, and has requested to proceed under the allegations in his initial Complaint.  ECF No. 17. The court will therefore evaluate Defendants' Motion for Summary Judgment based on the allegations in Plaintiff's initial Complaint.

Plaintiff also contends that he was denied utensils, a toothbrush and toothpaste, and an opportunity to bathe. *Id.* Plaintiff also argues that he was denied his court papers. *Id.*

Plaintiff alleges that he was again placed on control cell status on February 16, 2011, and all his belongings were confiscated, along with his clothing.[6] ECF No. 1 at 5. Plaintiff contends that he was kept continuously on control cell for 217 days. *Id.* at 5. Plaintiff argues that he was denied an opportunity to bathe for 113 days, and to brush his teeth for three months. *Id.* Plaintiff contends that he was denied clothing and was completely naked for four months, that he was denied a security blanket for six months, and was denied a mattress, sheets, and blankets from February 16, 2011 to October 12, 2011 (date of filing of his response). *Id.* Plaintiff also alleges that his legal materials and property were taken and not returned. *Id.* at 5, 10. Plaintiff argues that he was sprayed with mace on or about February 27, 2011 while completely naked and then denied medical treatment or an opportunity to wash the chemicals off for three months. *Id.* Plaintiff contends that Defendants refused to provide him with monthly supplies of soap, toothbrush, toothpaste, and envelopes from March to June 2011. *Id.* at 6. Plaintiff alleges that he was prevented from signing up for sick call for three months, and that Defendants refused to provide him with grievance forms from March to June 2011. *Id.* at 6-7. Plaintiff contends that in May 2011 he was taken to the administrative section of the dorm, naked except for an envelope covering his private parts, and made to walk in view of other inmates and staff. *Id.* at 10. Plaintiff contends that these conditions of confinement caused him physical and emotional distress. ECF No. 1 at 5-11.

Plaintiff seeks $10,000,000 in nominal damages, $10,000,000 in punitive damages, $23,587,200 in special damages, $33,587,200 in compensatory damages, that Defendants be

---

[6] Plaintiff notes that he was initially permitted to keep his underwear, but those were later confiscated also. ECF No. 1 at 5.

sentenced to prison terms if found guilty of assault or civil conspiracy or any other constitutional violation, $10,000,000 for conspiracy and tort claims, and declaratory and injunctive relief. ECF No. 1 at 19-20.

II.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990).  Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of

proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.     Analysis

A.  Failure to Exhaust

Defendants contend that they are entitled to summary judgment on Plaintiff's claims that he was denied access to eating utensils, toothpaste and a toothbrush because Plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e. ECF No. 120 at 4.   Section 1997e provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "'need not meet federal standards', nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).   Defendants have the burden of establishing that a plaintiff failed to exhaust his

administrative remedies. *Anderson v. XYZ Corr. Health Servs.*, *Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). However, '[d]efendants may . . . be estopped from raising non-exhaustion as an affirmative defense when prison officials inhibit an inmate's ability to utilize grievance procedures.'" *Stenhouse v. Hughes*, C/A No. 9:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

Defendants offer an affidavit from Ann Hallman, SCDC Branch Chief for Inmate Grievance Branch, who attests that she has reviewed Plaintiff's grievance history and Plaintiff did not file any grievances regarding access to toothpaste and toothbrush. Hallman Aff. ¶ 9, ECF No. 121. Hallman further attests that Plaintiff filed a grievance alleging that he had been given an unauthorized eating utensil; however, this grievance was returned unprocessed because Plaintiff did not attempt an informal resolution. *Id.* ¶ 10; ECF No. 121-2 at 1. Hallman avers that Plaintiff did not resubmit this grievance. Hallman Aff. ¶ 10.

In response to this argument, Plaintiff contends that Defendants denied him grievance forms and request-to-staff forms during the relevant time periods and he was therefore unable to exhaust his grievances. ECF No. 136-1 at 12-14. Plaintiff offers his own affidavit, together with four affidavits from fellow inmates, to support his contention that he was denied grievance forms. ECF No. 136-1 at 12. Inmate Antwan D. Grayson attests that SCDC correctional officers refused to give Plaintiff request forms and grievance forms "weekly for over 3 months." Grayson Aff. ¶¶ 6-7, ECF No. 136-2 at 2. Inmate Bernard Goodwin attests that Defendants Jackson, Parker, Carter, and Simmons refused to give Plaintiff grievances and request forms from March 2011 to June 2011. Goodwin Aff. ¶¶ 2-4, ECF No. 136-2 at 3. Goodwin avers that Defendant Parker started giving Plaintiff grievance forms "approx. April 2011." *Id.* ¶ 5. Inmate

Ervin Gadsden also attests that Plaintiff did not have request or grievance forms from "approx. February – July 2011." Gadsden Aff., ECF No. 136-2 at 4.

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that it is a question of fact whether Defendants inhibited Plaintiff's ability to use the grievance system by failing to provide Plaintiff with grievance forms from March to April 2011, which would be the time period that Plaintiff was required to grieve the denial of eating utensils, toothbrush and toothpaste. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Stenhouse*, 2006 WL 752876 at *2 ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies."). The undersigned finds that Defendants have not met their burden of showing "there is no genuine dispute as to any material fact" regarding Plaintiff's failure to exhaust his administrative remedies and therefore the undersigned recommends that Defendants' motion for summary judgment for failure to exhaust be denied.

### B. Denial of Medical Care

Plaintiff contends that Defendants denied him medical attention for his back injury and back pains. ECF No. 1 at 17. Plaintiff also argues that he was not given medical treatment when he was sprayed with a "lethal amount" of chemical mace on February 27, 2011. *Id.* Defendants argue that Plaintiff "does not have a cognizable Section 1983 claim for inadequate medical care" and offer the affidavit of Nurse Jennifer Ballesil, a registered nurse for SCDC at BRCI, in support of this argument. ECF No. 120 at 17. Ms. Ballesil did not personally examine or treat Plaintiff, and her affidavit is based on her review of Plaintiff's medical records. *See* Ballesil

7

Aff., ECF No. 124-2. Defendants contend that, between February 16, 2011 and January 24, 2012, Plaintiff was seen by SCDC medical personnel a minimum of 26 times. Ballesil Aff. ¶ 16. Defendants contend that Plaintiff's back pain was treated with "over-the-counter pain relievers [and] recommendations for stretching exercises," and that Plaintiff's back was x-rayed on September 10, 2012 and his x-ray was normal. *Id.* ¶¶ 17-18. Defendants further contend that Plaintiff never complained about "bleeding gums associated with the inability to brush his teeth" and that Plaintiff's oral hygiene was noted as poor by SCDC medical personnel in 2006. *Id.* ¶ 19. Defendants finally aver that Plaintiff was sprayed with chemical munitions on February 16 and 22, 2011 and Plaintiff's medical reports show that he was examined after both incidents and Plaintiff was noted to be "fine" with "no tearing, and no respiratory difficulties" and "no visible sign of injury." *Id.* ¶¶ 7-14. Defendants contend that Plaintiff's medical records do not show any subsequent complaints of irritation from the chemicals, *Id.* ¶ 11, and that Plaintiff had a sink in his cell in which he could use to wash away any irritant. Sutton Aff. ¶ 35, ECF No. 122. Plaintiff contends that he was sprayed with a lethal amount of mace on February 22, 2011, and the medical records that stated that he received treatment for the February 22, 2011 incident were falsified because Nurse Jackson "failed to examine Plaintiff." ECF No. 136-1 at 25-26; Abebe Aff. ¶¶ 1-7, ECF No. 136-4.

In order to prevail on a cause of action for deliberate indifference to medical needs, Plaintiff must show that the named Defendants were deliberately indifferent to his serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a

delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann,* 906 F. Supp. 1025, 1037 (E.D.Va.1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 450 U.S. 1041 (1981)). In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986).

Defendants do not offer any affidavits from the medical personnel who purported to examine Plaintiff following the February 22, 2011 mace incident. Instead, Defendants offer medical records, dated February 22, 2011, that indicate Plaintiff was "check[ed] post restraint chair removal," but have no notations concerning the administration of mace. *See* ECF No. 124-5 at 7. Accordingly, Plaintiff's contention that he was not treated following the administration of mace is undisputed, *see* ECF Nos. 136-6 at 1, and the undersigned finds that this lack of treatment, together with Plaintiff's attestation that he periodically suffered from a burning sensation on his skin and eyes for approximately three months,[7] at the very least, creates a question of fact concerning whether Plaintiff was unconstitutionally denied medical treatment. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."). It is therefore recommended that summary judgment be denied as to this claim. The undersigned further finds that Defendants' unopposed contentions that Plaintiff did not complain to medical personnel about bleeding gums, and that Plaintiff received adequate treatment and care for his back pain and for the February 16, 2011 mace incident, are sufficient

---

[7] *See* ECF No. 1 at 5-6.

to defeat Plaintiff's remaining medical indifference claims.  Accordingly, it is recommended that summary judgment be granted on these claims.

### C.  Violation of Due Process

Plaintiff contends that he was denied due process when Defendants refused to release him from "control cell status" upon the expiration of 72 hours as required by SCDC policy.  ECF No. 1 at 11.  Plaintiff argues that he was placed on control cell status on September 17, 2010 and released 18 days later.  ECF No. 136-1 at 15.   Plaintiff contends that he was again placed on control cell status on February 16, 2011, and was released from control cell status on January 23, 2012, making his total time on control cell status 341 days.  ECF No. 120 at 10; ECF No. 136-1 at 15.

The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994).  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Under the Supreme Court's pronouncement in *Sandin v. Conner*, 515 U.S. 472 (1995), a liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, the due process inquiry must focus on the nature of the deprivation alleged.  *Id.* Following the reasoning of the Supreme Court in *Sandin*, the Fourth Circuit decided *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), and held that a liberty interest was not implicated when plaintiffs were placed in administrative segregation, because "although the conditions [described by plaintiffs] were more burdensome

than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* at 502–04.

The analysis in *Beverati* requires the court to conduct a fact-specific examination to determine if the conditions Plaintiff describes give rise to a liberty interest.  The Supreme Court in *Wilkinson v. Austin,* 545 U.S. 209 (2005), held that, in order to measure whether an inmate's new custodial situation imposes "an atypical and significant hardship within the correctional context," it must be measured against a "baseline." *Wilkinson,* 545 U.S. at 223-24. While *Wilkinson* did not establish what this "baseline" should be, the Fourth Circuit uses the conditions "imposed on the general population" as the baseline for its analysis. *Beverati*, 120 F.3d at 504.

Plaintiff contends that Defendants kept him in control cell status longer than the 72 hours authorized by SCDC policy causing Plaintiff to suffer significant hardship.  ECF No. 1 at 12. Plaintiff argues that he was without clothing, including underwear, for four months, and suffered embarrassment and humiliation when he was made to walk in front of other prisoners naked. ECF No. 1 at 5, 10.  Plaintiff alleges that he had to sleep on the concrete floor or a steel bedframe for six months, causing back, arm, and leg pain.  *Id.* at 11.  Plaintiff contends that he was also unable to bathe and therefore could not wash mace from his skin for over three months which caused him to experience periodic burning sensations.  *Id.*  Plaintiff also alleges that he was unable to brush his teeth for approximately three months which caused his gums to weaken and bleed.  *Id.* at 11-12.

SCDC Policy OP-22.12:31.1, quoted verbatim, provides that an inmate may be placed in a control cell for ***up to 72 hours*** when the inmate:

- is a threat to others by his/her actions;

- •     is deliberately causing damage to the cell; is using items in the cell to cause damage to the cell or any part of the cell's facilities; and/or
- •     is using items in the cell to disrupt operations in any manner.

ECF No. 39-1 at 14-15 (emphasis added).  SCDC Policy OP-22.12:31.2 states that an inmate will be reviewed at 24 and 48 hours for possible release from the control cell and that the only items an inmate is permitted to have while on this status is one pair of underwear, one paper gown, and one security blanket.  *Id.* at 15.  SCDC Policy OP-22.12:31.4 provides that an inmate will be released from the control cell when the Warden, Duty Warden, or Major determines that the inmate is demonstrating compliance with institutional rules.  *Id.* at 15.

Defendants contend that Plaintiff was placed on control cell status upon Plaintiff's arrival at BRCI "pursuant to SCDC Pre-Hearing Detention ("PHD") status [and an] Institutional rule which allows for a period of acclimation, evaluation, and adjustment to a new Institution."  ECF No. 120 at 10.  Defendants contend that Plaintiff was kept on control cell status for ten days and was released after being evaluated by the "SMU-Institutional Classifications Committee."  *Id.* Defendants aver that Plaintiff was again placed on control cell status on February 17, 2011, after receiving two disciplinary charges on February 15 and 16. Sutton Aff. ¶ 5;  ECF No. 122-5; Stevenson Aff. ¶ 6, ECF No. 124-1.  Plaintiff received three additional disciplinary charges on February 18 and 22, 2011, and on February 24, 2011, and Associate Warden Cartledge recommended to Warden Stevenson that Plaintiff have his control status extended. Sutton Aff. ¶ 26; ECF No. 122-10.  Defendant Stevenson attests that he placed Plaintiff on extended control cell status on February 24, 2011.  Stevenson Aff. ¶ 7. Defendants contend that due to his continued assaultive and disruptive behavior, Plaintiff remained on control cell status until January 23, 2012.  Sutton Aff. ¶ 5; Stevenson Aff.  ¶ 16.  Defendants argue that Plaintiff's records show that Plaintiff had ten assaultive and 13 non-assaultive violations of SCDC

procedures in 2011, which includes three convictions for destroying SCDC property.    Sutton Aff. ¶¶ 31, 38.  Defendants contend that Plaintiff's control cell status was evaluated every 72 hours by a committee of SCDC personnel, including members of the Warden's staff.  Sutton Aff. ¶ 28; Stevenson Aff.  ¶ 10.

Defendants argue that SCDC "has not created a liberty interest in an inmate's right to be free from control cells."  ECF No. 120 at 14.  Defendants argue that although SCDC's policy authorizing the control cell includes a 72-hour evaluation period, that the policy authorizes "SCDC officials to extend control cell time if the inmate does not comply with Institutional policies."  *Id.* at 14.  Defendants argue that Plaintiff's stay on control cell was "ultimately in his sphere of control, and an improvement in Plaintiff's behavior could have resulted in a shortened time on control cell, but the Plaintiff chose to continue his disruptive behavior."  *Id.* Plaintiff responds to this argument and contends that SCDC's policy does not permit an SMU inmate's time in a control cell to be extended beyond 72 hours, and that Defendants' extension of Plaintiff's time violated Plaintiff's due process rights.  ECF No. 136-1 at 19.

As an initial matter, the undersigned finds that Plaintiff's placement in a control cell for 10-18 days is insufficient to trigger due process protection. *Beverati*, 120 F.3d 502-04. However, Plaintiff's 341 days in a control cell, together with the denial of clothing, bedding/mattress for 11 months, and a four-month denial of an opportunity to bathe, brush his teeth, or have access to hygiene products, created an atypical or significant hardship in violation of a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472 (1995). Thus, the undersigned finds that Plaintiff was entitled to due process concerning the procedures for release from his continued placement in control cell status.

Generally, Plaintiff's allegations that Defendants did not follow SCDC's policies or procedures, standing alone, would not amount to a constitutional violation. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (The "Constitution creates no entitlement to … any such procedure voluntarily established by a state.").  However, Defendants themselves cite to SCDC policies and procedures in support of their argument that Plaintiff's placement in a control cell was appropriate. After review of the evidence before the court, the undersigned finds that SCDC's policies do not provide for an extension of control cell status for SMU inmates beyond 72 hours. *See* ECF No. 39-1 at 14-15. Further, even if an extension of the 72-hour time period was permitted, there is no evidence in the record indicating for what period of time the extension was granted. *See* ECF No. 122-10 (2/24/11 Request that Plaintiff's control cell time be extended; no response to this request is provided).  Further, Defendants' contention that Plaintiff's placement in control cell was reviewed every 72 hours is not substantiated by the record. *See* ECF No. 124-2 at 1-3 (SCDC Staff memorandum noting 30-day review, and Warden's monthly review, but no additional information as to whether Plaintiff's control cell placement was being evaluated). Finally, addressing Defendants' contention that Plaintiff's continuous assaultive and disruptive behavior caused Plaintiff to remain on control cell status until January 23, 2012, the undersigned finds that Plaintiff's last assaultive disciplinary conviction was August 1, 2011, and his last non-assaultive disciplinary conviction was August 1, 2011.  *See* ECF No. 122-4 at 1-3.  Plaintiff does not have any additional assaultive or non-assaultive convictions from August 1, 2011 to January 23, 2012, when Plaintiff was removed from control cell status.  *See* ECF No. 122-4 at 1-3.  The undersigned therefore finds that there was a 175-day time period when Plaintiff did not have any assaultive or disruptive behavior, but was still kept on control cell status.   After a review of the record before the court, the undersigned finds that the record fails to establish that Defendants

provided Plaintiff with minimal due process as required by the Constitution. Accordingly, the undersigned recommends that Defendants' motion for summary judgment as to this claim be denied. *See Sweet v. South Carolina Dept. of Corrections*, 529 F.2d 854, 865 (D.S.C. 1975) ("As we have seen, confinement in the 'strip cell' has often been found inoffensive under the constitutional provision if the confinement is for a short duration but invalid under the 'cruel and unusual' provision of the Eighth Amendment if long extended.").

D.  Conditions of Confinement

Defendants argue that "Plaintiff has failed to allege facts that meet the standard of deliberate indifference in order to sustain a claim for an Eighth Amendment violation against Defendants." ECF No. 120 at 11. Plaintiff contends that he was denied a mattress for over six months and was, therefore, forced to sleep on the concrete floor or the steel bedframe. ECF No. 1 at 17. Plaintiff argues that this denial of a mattress caused him back, side, leg, and arm pains. *Id.* Plaintiff also contends that he was denied a cup and spoon for ten days, the opportunity to bathe, and the use of a toothbrush, toothpaste, soap, towel, washcloth, and deodorant for three months. *Id.* Plaintiff also alleges that he was denied sheets and a blanket for six months, and clothing for over three months, which resulted in him being taunted by other inmates. *Id.* Plaintiff states he was denied a shower for three months after he was sprayed with mace while completely naked, and that the mace would "reactivate from time to time causing continuous burning." *Id.*

As a general matter, the Eighth Amendment prohibits punishments that "are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' or which involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102-103. Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical

care." *Farmer*, 511 U.S. at 832. Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim.").

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991); *Shakka*, 71 F.3d at 166. To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference--that is, the prisoner must show the officials acted with more than mere negligence but less than malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Farmer,* 511 U.S. at 835-37. For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 Fed. Appx. 348, 353 (4th Cir. 2012). To withstand summary judgment on a challenge to prison conditions, Plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

It is well settled that, in reviewing complaints of living conditions, the analysis is based on the totality of the circumstances, meaning whether the challenged conditions, alone or in combination, deprive inmates of the minimal civilized measure of life's necessities. *See Williams*, 952 F.2d at 824. The Fourth Circuit has clarified this to mean that the alleged

conditions of confinement must have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson*, 501 U.S. at 304. However, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305.

Defendants argue that Plaintiff has failed to allege facts to sustain an Eighth Amendment claim against Defendants. ECF No. 120 at 11. Defendants aver that Plaintiff was placed on control cell status on February 17, 2011, following two assaultive disciplinary convictions, and his status was extended due to Plaintiff's additional disruptive and violent behavior. ECF No. 120 at 13. Defendants contend that SCDC had a penological reason for Plaintiff's placement on control cell status, and this placement did not cause Plaintiff substantial harm. ECF No. 120 at 13. Defendants argue that the record before the court shows that Plaintiff was provided with adequate meals and was afforded the same opportunity as other inmates for basic hygiene. ECF No. 120 at 13. Defendants contend that SMU inmates are offered an opportunity to bathe three times a week and submit SCDC Forms 19-32 which Defendants contend show that Plaintiff was "offered regular opportunities to meet his personal hygiene needs" while in control cell status. ECF No. 120 at 15. Defendants further argue that even if Plaintiff shows that he was not permitted to bathe, Plaintiff has not alleged damages as a result of these allegations. ECF No. 120 at 15. Defendants finally contend that the removal of Plaintiff's mattress comports with SCDC's policies concerning placement in a control cell and the removal of a mattress. ECF No. 120 at 11. Defendants further contend that they attempted to return a mattress to Plaintiff in October and November 2011, but Plaintiff refused the mattress. *Id.* at 12.

In response to Defendants' arguments, Plaintiff contends that "Defendants actions was [sic] 'grossly out of proportion to the alleged infraction and were acting with the intent to at least

deprive [Plaintiff] of [his] most basic necessities." ECF No. 136-1. Plaintiff argues that Defendants' documentation concerning Plaintiff being denied showers are for time periods outside of the period which Plaintiff claims he was denied showers, February 18 to June 2011. ECF No. 136-1 at 23. Plaintiff contends only three of the SCDC Forms 19-32 pertain to the February to June 2011 time frame, and that Plaintiff has sworn affidavits that dispute the truthfulness of Defendants' claims. ECF No. 136-1 at 24. Plaintiff contends that a "jury may find that the Defendants having Plaintiff in a cell completely naked, with no mattress, blanket, hygiene and covered with mace and refusing to give him showers was grave unfairness in the discharge of their legal responsibilities." ECF No. 136-1 at 24. Plaintiff contends that Defendants have a constitutional duty to provide for "basic human needs e.g. food, clothing, shelter, medical care and reasonable safety." *Id.* at 24.

The undersigned finds that Defendants have failed to offer argument that establishes that there is no genuine issue of fact concerning Plaintiff's Eighth Amendment claims. Conditions implicating Eighth Amendment rights are to be examined in connection with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). As the Supreme Court noted in *Hutto v. Finney, supra*:

> The Eighth Amendment's ban on inflicting cruel and unusual punishments, made applicable to the States by the Fourteenth Amendment, "proscribe(s) more than physically barbarous punishments." It prohibits penalties that are grossly disproportionate to the offense, as well as those that transgress today's "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"

437 U.S. 678, 685 (1978).

The undersigned finds that Plaintiff has offered sufficient evidence to show that he suffered a serious deprivation of a basic human need. First, Defendants have not offered any evidence to challenge Plaintiff's claims that he was denied clothing for 11 months. Second,

although Defendants contend that their denial of a mattress to Plaintiff was supported by SCDC policy, they have not offered any evidence that supports this claim.[8]  While SCDC policy permits an inmate's mattress to be confiscated for up to one year, the only evidence Defendants have offered to support why Plaintiff's mattress was confiscated was the general argument that Plaintiff's conviction for destroying SCDC property permits the confiscation of his mattress, and that SCDC's control cell policy allows the confiscation of Plaintiff's mattress indefinitely.[9]  The undersigned has reviewed the documentation concerning these convictions, *see* ECF No. 122-4 at 3, and notes that these disciplinary convictions occurred in May and July 2011, more than three months after Plaintiff's mattress was initially removed.   Additionally, although Defendants point to evidence in the record that Plaintiff was offered, and declined, a mattress in October 2011, this evidence is controverted by Plaintiff and other inmates who contend that the mattress Plaintiff was offered was not sanitary, and that Plaintiff did eventually agree to take this mattress and it was still not given to him.  *See* Gadsden Aff., ECF No. 136-3 at 24; Aleshire Aff. ¶¶ 2-5, ECF No. 136-3 at 25;   Wardlaw Aff. ¶¶ 2-11, 136-3 at 29; Abebe Aff. ECF No. 136-4 at 15-19, 22, and 136-5 at 20.   Although Defendants have also argued that Plaintiff was offered an opportunity to bathe and was provided hygiene products three times a week during the February to June 2011 time frame, Defendants' documentation shows no showers being offered in February 2011, no documentation concerning showers in March 2011, one shower offered in

---

[8] SCDC Policy OP-22.36.1 states that an inmate's mattress may be confiscated when an "inmate is found to have damaged, destroyed, or abused any state property."  ECF No. 39-2 at 2.  Section 1.2 of this policy provides that the Warden may authorize confiscation of a mattress for up to one year "if the property has been used to set a fire in [inmate's] cell or used to assault a staff member or inmate."  *Id.*  Section 1.2 also explains that the confiscation of the mattress is not considered grievable.  *Id.*  Section 1.3 provides that the Warden is to "notify the inmate by memo of the length of the confiscation and the reasons for the confiscation and that security staff will be responsible for documenting any items and the duration of the confiscation in the unit log book."  *Id.*

[9] According to the record provided to the court, SCDC's policy only permits an inmate's placement in control cell status for up to 72 hours.  *See* ECF No. 39-1 at 14-15.

April 2011, and two showers offered in May 2011.  ECF No. 122-12 at 2-4.  The undersigned finds that Defendants' evidence, taken together with the affidavits offered by Plaintiff, creates a genuine issue of fact as to whether Plaintiff was provided opportunities to bathe.  *See* Grayson Aff. ¶¶ 2-5, ECF No. 136-2 at 2; Gadsden Aff., ECF No. 136-2 at 4, Abebe Aff. (4/7/13), ECF No. 136-2 at 16; Goodwin Aff. ¶¶ 3-4, ECF No. 136-3 at 13; Logan Aff., ECF No. 136-3 at 22.  Plaintiff finally argues that Defendants' failure to provide him with a security blanket while he was held in control cell status, as required by SCDC Policy OP-22.12, was cruel and unusual punishment.  ECF No. 136-1 at 23-25.  Defendants contend that although SCDC Policy OP-22.12 "allows for an Inmate on control cell status to possess a security blanket, [] it does not require the issue of such item."  Sutton Aff. ¶ 8.

The undersigned finds that Plaintiff has also offered sufficient evidence that Defendants acted with deliberate indifference to Plaintiff's conditions of confinement.  Plaintiff has offered his own affidavit, together with affidavits from fellow inmates, that Defendants were aware that Plaintiff did not have clothing, did not have a mattress or a security blanket, and was not given hygiene products or permitted to bathe, and Defendants took no actions to correct these conditions. *See* Grayson Aff. ¶¶ 2-5;   Abebe Aff. (4/7/13); Goodwin Aff. ¶¶ 3-7; Bryan Aff., ECF No. 136-3 at 15; Abebe Aff. ¶¶ 2-5, ECF No. 136-4 at 11; Abebe Aff. ¶¶ 2-7, ECF No. 136-4 at 12; Abebe Aff. ¶¶ 2-4, ECF No. 136-4 at 13; Abebe Aff. ¶¶ 4-5, ECF No. 136-4 at 4-5.  The undersigned finds that Plaintiff has also offered evidence that he suffered "a serious or significant physical or emotional injury resulting from the challenged conditions." Plaintiff contends that he suffered back and leg pains and muscle spasms and sharp pains throughout his body from sleeping without a mattress and on the concrete floor or metal bed springs.  *See* Abebe Aff. (10/25/11), ECF No. 136-4 at 8; ECF Nos. 136-5 at 3, 5, 13-17, 19, 21, 23.  Plaintiff

contends that he feared that his being naked in front of other prisoners would place him in danger from "known, open homosexual prisoners," that he was embarrassed and humiliated when he "was taunted by homosexuals" who had seen him walking naked upon leaving his cell, and that he spoke with mental health counselors concerning the effect his living conditions were having on him. ECF No. 1 at 5, 7, 10;  ECF No. 136-3 at 14, 18.  Plaintiff also contends that for approximately three months he periodically suffered from a burning sensation on his skin and eyes when he was denied an opportunity to bathe and wash mace from his skin.  ECF No. 1 at 5-6.  Defendants do not offer any evidence that contradicts Plaintiff's allegations of physical and emotional injury.

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that Defendants have presented insufficient evidence which addresses Plaintiff's alleged constitutional violations under the Eighth Amendment, i.e. that Plaintiff was denied the basic human necessities of clothing, a mattress and blanket, and the ability to bathe for a period of four to eleven months.  The undersigned therefore recommends that Defendants' motion for summary judgment on this claim be denied.  *See O'Connor v. Keller*, 510 F. Supp. 1359, 1372 (D. Md. 1981)(finding that confinement of prisoner in isolation cell for 48 hours violated prisoner's right not to be subjected to cruel and unusual punishment where the isolation cell did not contain bed, mattress or blanket, prisoner was naked when placed into cell, prisoner was not given mattress, blanket, or toilet paper during entire period in the cell, and prison officials failed to demonstrate that prisoner's confinement bore reasonable relationship to purposes for which inmate could be so held); *Dawson v. Kendrick*, 527 F. Supp. 1252, 1288-89 (D. W.Va. 1981) (holding that the failure to regularly provide prisoners with clean bedding, towels, clothing and sanitary mattresses

as well as toilet articles including soap, razors, combs, toothpaste, and toilet paper was violative of Eighth Amendment).

### E.  Denial of Access To Court

Plaintiff contends that when he was placed in control cell status in September 2010 and February 2011, he was denied paper, pens, and envelopes.  ECF No. 1 at 15.  Plaintiff also argues that his court papers and legal materials were confiscated which caused him to miss an October 5, 2010 deadline, and February to March 2011 court deadlines in his pending civil and criminal cases.  ECF No. 1 at 4, 12, 15.  Specifically, Plaintiff argues that he was not able to file motions or conduct research or investigations in his pending court cases because he did not have his case number, warrant number, case file, or legal files.  *Id.* at 16.  Plaintiff also contends that a pending federal court case was dismissed in part because he was unable to respond to the court's deadline due to Defendants' refusal to return all his files in the case.  *Id.*

Defendants contend that Plaintiff's conclusory allegations are insufficient to establish an actual injury as is required for a denial-of-access-to-courts claim.  ECF No. 120 at 19. Defendants argue that Plaintiff, while on control cell status, was able to file "four documents" related to the state court action pending in Spartanburg County, and that this action was ultimately *nolle prossed*.  ECF No. 120 at 19-20.  Defendants further argue that Plaintiff filed a civil action in Spartanburg County and made fourteen filings in a civil action pending in Lee County.  ECF No. 120 at 20.   Defendants also contend that criminal charges against Plaintiff under the last name "Adeve" were dismissed before Plaintiff was placed on control cell status, and that a Richland County criminal action was dismissed while Plaintiff was on control cell status.  *Id.* at 21.   Defendants further contend that Plaintiff was able to file a post-conviction action in Richland County while on control cell status, and argue that the record before the court

establishes that Plaintiff's placement in control cell status did not cause him to miss any deadlines in his federal court actions. *Id.* at 22-23. Defendants argue that the evidence shows that "Plaintiff was given more than adequate opportunity to prosecute this and several other matters in both state and federal court while on control cell status." *Id.* at 23.

In response to this argument, Plaintiff contends that being on control cell status caused him to miss a February/March court deadline in *Abebe v. Goffrey*, 9-cv-03111-MBS. Plaintiff argues that Defendants' confiscation of his case files prevented Plaintiff from objecting to the Report and Recommendation in *Goffrey*, which caused Plaintiff to waive his right to appeal. ECF No. 136-1 at 30; ECF No. 136-3 at 6. Plaintiff argues that a jury could find "injury" in the loss of his appellate rights. *Id.* Plaintiff additionally contends that it is irrelevant that the Spartanburg criminal action was dismissed, because the "dismissal did not fall within the relevant times of this case i.e. Feb 2011-Jan 2012." *Id.* Plaintiff argues a jury could find that he was injured because his files were withheld and he had to appear at a hearing without any files. Abebe Aff. ¶¶ 2-5, ECF No. 136-3 at 8. Plaintiff finally argues that although his Richland County criminal case was dismissed without prejudice, that the charges can be "revived" and then Plaintiff would be facing a potential life sentence. ECF No. 136-1 at 30-31. Plaintiff argues Defendants confiscated a key witness statement that is important to his defense of the Richland County case. *Id.* at 31.

The right of access to the courts is the right to bring to court a grievance that the inmate wished to present, and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct.

*Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Actual injury requires that the inmate demonstrate that his "non-frivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353.

The undersigned finds that Plaintiff has failed to furnish sufficient facts or evidence to survive summary judgment on his access-to-courts claim. The record shows that the two pending criminal cases referenced by Plaintiff were ultimately dismissed, and although the Richland County case was dismissed without prejudice, Plaintiff has not offered any evidence to show that the prosecutor plans to reinstate the action. Addressing Plaintiff's claims regarding the dismissal of his action in *Goffrey* and the loss of his appellate rights, the undersigned finds that Plaintiff was not on control cell status during the time period he was given to respond to the pending summary judgment motion in that case, and Plaintiff did not file a Response. *See* Docket C/A No. 9-cv-3111, ECF No. 96.[10] Further, although the time period for Plaintiff to object to the Report and Recommendation ("R&R") recommending that summary judgment be granted to Defendant was covered by a portion of the time Plaintiff was in control cell status, Plaintiff has not provided the court with any potential objections that he would have made to the R&R and therefore cannot show that a "non-frivolous" civil rights action was impeded. The undersigned therefore recommends that Plaintiff's access-to-courts claim be dismissed. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (finding dismissal of access-to-court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury).

F. Equal Protection

Plaintiff contends that he was denied equal protection by Defendants when he was placed on control cell status and his belongings were not returned at the expiration of the 72 hour time

---

[10] This Court may take judicial notice of its own records. *See, e.g., Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir.1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

period unlike other similarly-situated inmates. ECF No. 1 at 15. Plaintiff argues that he is being discriminated against because of his ethnic background and disciplinary record in violation of the Fifth and Fourteenth Amendments. *Id.*

Defendants contend that "no evidence exists that supports Plaintiff's allegations of equal protection violation based on race or any other factor." ECF No. 120 at 24. Defendants contend that Plaintiff was "justifiably placed on control cell status" due to his "disruptive and violent behavior" and his control cell status was continued due to Plaintiff's "continued threat to the safety of himself and SCDC staff." *Id.* at 25. Defendants allege that Plaintiff's "administration detention status had nothing to do with his race." *Id.* Plaintiff argues that Defendants' motion should not be granted because Defendants did not offer any evidence that Plaintiff "was not treated differently from similarly situated inmates." ECF No. 136-1 at 26. Plaintiff argues that a jury could find that he and Inmate Murray were similarly situated, but Plaintiff was treated differently because of his race. *Id.* Plaintiff offers Inmate Murray's affidavit in support of his argument. Murray Aff., ECF No. 136-6 at 25. Inmate Murray attests that he was involved in two separate incidents with SCDC officers and was placed on control cell and after the expiration of 72 hours his property was returned. *Id.*

To succeed on an equal protection claim under the Fourteenth Amendment, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "If [he] makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (quoting *Morrison*, 239 F.3d at 654). The undersigned has reviewed the evidence presented by

Plaintiff and finds that Plaintiff has not submitted sufficient evidence to show that he was placed in control cell status, and his status was continued indefinitely, based on his race. Accordingly, it is recommended that Defendants' motion for summary judgment be granted on this claim.

### G.   State Law and Section 1983 Civil Conspiracy Claims

Plaintiff argues that Defendants did not move for summary judgment on his § 1983 claim, and therefore this claim should not be dismissed. ECF No. 136-1 at 28. "To establish a civil conspiracy under § 1983, [Plaintiff] must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). In reply to Plaintiff's argument, Defendants argue that Plaintiff's civil conspiracy claim should be dismissed because this claim is based on "nothing more than speculation and conjecture." ECF No. 140 at 2. Defendants argue that Plaintiff has not presented any evidence that "any of the Defendant-to-Defendant communication, or communication with him directly, was in furtherance of a conspiracy to violate his constitutional rights." *Id.* at 3.

> As the Fourth Circuit stated in *Hinkle*, to survive a summary judgment motion, Plaintiff
>
> must [at least] come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective. In other words, [Plaintiff's] evidence must, at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.

81 F.3d 416, 421 (4th Cir. 1996) (internal citations omitted). Upon review, the undersigned finds that Plaintiff has failed to set forth any evidence, other than his speculation, to establish that Defendants intentionally conspired to deny Plaintiff's constitutional rights. Accordingly, the

undersigned recommends that summary judgment be granted on Plaintiff's state law and § 1983 conspiracy claims.

### H.  State Law Assault Claims

Plaintiff alleges a state law assault claim against Defendants arguing that Defendants' actions "caused [him] to have a reasonable apprehension and fear of imminent sickness and physical back injury."  ECF No. 1 at 18.  Under South Carolina law "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." *Jones v. Winn-Dixie Greenville, Inc.*, 456 S.E.2d 429, 432 (S.C. Ct. App. 1995) (citation omitted). Defendants move for summary judgment on this claim, contending that § 1983 is "an inappropriate vehicle for the prosecution of state law tort actions."   ECF No. 120 at 26. Defendants also argue they should be granted summary judgment on Plaintiff's assault claim because "there are no facts before the Court to support Plaintiff's state law tort claim[] of . . . assault."  *Id.*   Plaintiff argues that Defendants only contend that the court does not have jurisdiction over his state law claims.  ECF No. 136-1 at 29.  Plaintiff contends that the court does have supplemental jurisdiction over his state law claims because they "derive from a common nucleus of operative facts."  *Id.*  The undersigned finds that Plaintiff has not put forth any facts or arguments to support an assault claim under South Carolina law, and therefore, recommends that summary judgment be granted on this claim.

### I. Qualified Immunity

Defendants assert that they are entitled to qualified immunity as a matter of law because there is "no competent evidence that [they] engaged in unlawful conduct or violated any clearly established statutory or constitutional right which is subject to redress under § 1983."  ECF No. 120 at 25-26.  The Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982),

established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case – that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit." *Id.* (citations and internal quotation marks omitted).

Given the present factual disputes outlined *supra* regarding Plaintiff's due process, conditions of confinement, and medical indifference claims (2/22/11 mace incident), the undersigned recommends that qualified immunity be denied on those claims. *See Peoples v. Lloyd,* C/A No. 1:08-3958-CMC, 2010 WL 3951436 (D.S.C. Oct. 7, 2010) (denying defendant's defense of qualified immunity because issues of fact existed as to defendant's use of excess physical force and use of chemical munitions). As to Plaintiff's remaining claims, the record

before the court shows that, as to the specific events at issue, Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity on Plaintiff's remaining medical indifference claims, denial-of-access-to-courts claim, equal protection claims, conspiracy claims, and assault claims.

IV.   Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that Defendants' Supplemental Motion for Summary Judgment, ECF No. 120, be denied in part and granted in part.  It is recommended that Defendants' summary judgment grounds be **denied** as to Plaintiff's due process, conditions of confinement, and medical indifference (2/22/11 mace incident) claims.  It is further recommended that Defendants be **granted** summary judgment on Plaintiff's remaining medical indifference claims, denial-of-access-to-courts claim, equal protection claim, conspiracy claims, and state law assault claim. If the court accepts this recommendation, Plaintiff's Motion for Leave to File a Supplemental Complaint, ECF No. 144, would be moot.

IT IS SO RECOMMENDED.

November 19, 2013                                   Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**